**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-1354

HUMAN RIGHTS DEFENSE CENTER,

     Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS FOR WELD COUNTY, COLORADO;
STEVEN REAMS, Sheriff, in his official and individual capacities;
DONNIE PATCH, Undersheriff, in his individual capacity;
MARCY ROLES-FOOS, Captain, in her individual capacity; and
DOES 1-10, in their individual capacities,

     Defendants.

---

## COMPLAINT

---

### INTRODUCTION

1.     Plaintiff, Human Rights Defense Center ("HRDC" or "Plaintiff"), brings this action to enjoin Defendants from censoring publications that Plaintiff mails to prisoners who are held in custody at the Weld County Jail (the "Jail"), in violation of the First and Fourteenth Amendments of the United States Constitution.

2.     For decades, the United States Supreme Court has recognized that the freedom to read and correspond with the outside world while incarcerated carries important benefits to both prisoners and society as a whole. To this end, plaintiff, HRDC provides prisoners across the United States with publications about their legal and civil rights, as well as options for accessing education while incarcerated. Some of these publications are periodicals and some are books. At times

HRDC will send information that is requested by prisoners, and at other times HRDC will send information unsolicited to assist prisoners and in furtherance of its mission to educate prisoners.

3.     Defendants have adopted and implemented mail policies and practices prohibiting delivery of written speech from HRDC.  Defendants' actions violate HRDC's rights under the First and the Fourteenth Amendments of the United States Constitution. HRDC thus brings this action, pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief and damages to be proven at trial.

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 28 U.S.C. § 1331, as it arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343, as it seeks redress for civil rights violations under 42 U.S.C. § 1983.

5.     Venue is proper under 28 U.S.C. § 1391(b).  At least one Defendant resides within this judicial district, and the events giving rise to the claims asserted herein occurred within this judicial district.

6.     HRDC's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the First and Fourteenth Amendments of the U.S. Constitution and laws of the United States.

7.     This Court has jurisdiction over claims seeking declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as claims seeking nominal and compensatory damages against all Defendants.

8.      This Court has supplemental jurisdiction over HRDC's state law claim pursuant to 28 U.S.C. § 1367, as they arise from the same case or controversy as HRDC's claims under federal law.

9.      HRDC's request for attorneys' fees and costs is predicated upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

## PARTIES

10.     HRDC is a not-for-profit charitable organization recognized under § 501(c)(3) of the Internal Revenue Code, incorporated in the state of Washington and with principal offices in Boynton Beach, Florida.

11.     Defendant Board of County Commissioners for Weld County ("Weld County") is the governing body for Weld County, Colorado, a formally constituted political subdivision of the state of Colorado.  Weld County has delegated its authority for the operation of the Jail to Sheriff Steven Reams.

12.     Defendant Steven Reams ("Reams") is the elected Sheriff of Weld County, Colorado, to whom Weld County has delegated the operation of the Jail.  Sheriff Reams is responsible for overseeing the management and operations of the Jail, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of the Jail who interpret and apply the mail policy to prisoners.  As Sheriff, Reams is a final policymaker for the Jail with respect to all of its operations, including for policies governing incoming mail for prisoners.  He is sued in both his official[1] and individual capacities.

---

[1] In lieu of naming the Weld County Sherriff's Office as a Defendant.

3

13.    Defendant Donnie Patch ("Patch") is the Undersheriff of Weld County, Colorado. Patch is employed by and is an agent of Defendants Weld County and Reams.  Undersheriff Patch is responsible for overseeing the management and operations of the Jail, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the personnel of the Jail who interpret and apply the mail policy to prisoners.  As Undersheriff, Patch is a policymaker for the Jail with respect to all of its operations, including for policies governing incoming mail for prisoners.  He is sued in his individual capacity.

14.    Defendant Marcy Roles-Foos ("Roles-Foos") is a Captain of the Weld County Sheriff's Office.  Roles-Foos is employed by and is an agent of Defendants Weld County and Reams.  As Captain, Roles-Foos is responsible for overseeing the management and operations of the Jail, and for the hiring, screening, training, retention, supervision, discipline, counseling, and control of the Jail personnel who interpret and apply the mail policy for prisoners.  She is sued in her individual capacity.

15.    The true names and identities of Defendants DOES 1 through 10 are presently unknown to HRDC.  Each of DOES 1 through 10 are or were employed by and are or were agents of the Jail when some or all of the challenged mail policies and practices at the Jail were adopted and/or implemented.  Each of DOES 1 through 10 are or were personally involved in the adoption and/or implementation of the Jail's mail policies for prisoners, and/or are or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of the Jails staff who interpret and implement these mail policies.  DOES 1 through 10 are sued in their individual and official capacities.  HRDC will seek to amend this Complaint when the true names and identities of DOES 1 through 10 have been ascertained.

16.     At all times material to this Complaint, the actions of all Defendants as alleged herein were taken under the authority and color of state law.

## FACTUAL ALLEGATIONS

### I.     HRDC's Publications

17.     For more than 35 years, the focus of HRDC's mission has been public education, advocacy and outreach on behalf of, and for the purpose of assisting, prisoners who seek legal redress for infringements of their constitutionally guaranteed and other basic human rights. HRDC's mission, if realized, has a salutary effect on public safety.

18.     To accomplish its mission, HRDC publishes and distributes books, magazines, and other information containing news and analysis about prisons, jails and other detention facilities, prisoners' rights, court rulings, management of prison facilities, prison conditions and other matters pertaining to the rights and/or interests of incarcerated individuals.

19.     HRDC publishes and distributes an award-winning monthly magazine titled *Prison Legal News: Dedicated to Protecting Human Rights* ("*Prison Legal News*"), which contains news and analysis about correctional facilities, the rights of prisoners, court opinions, prison and jail conditions, excessive force, and religious freedom.  In 2013, *Prison Legal News* received the First Amendment Award from the Society of Professional Journalists.  *Prison Legal News* is published on newsprint bound by two small staples, and is 72 pages long.

20.     HRDC also publishes and distributes a second monthly magazine titled *Criminal Legal News*, which contains news and analysis about individual rights, court rulings, and other criminal legal-related issues.  *Criminal Legal News* is also published on newsprint bound by two small staples, and is 56 pages long.

5

21.     HRDC also publishes and/or distributes several different soft-cover books on criminal justice, health, and legal issues that are of interest to prisoners and others.  HRDC publishes and distributes the *Prisoners' Guerilla Handbook: A Guide to Correspondence Programs in the United States and Canada* ("*Prisoners' Handbook*"), which provides information on enrolling at accredited higher educational, vocational and training schools.  HRDC does not publish, but is the sole national distributor of *Protecting Your Health and Safety* ("*PYHS*"), which describes the rights, protections and legal remedies available to persons concerning their health and safety while they are incarcerated.

22.     In addition to its publications, HRDC also communicates with prisoners through the United States Postal Service by mailing them: (a) informational brochure packets ("Info Packs"), which contain a brochure and subscription order form, a book list, and a published books brochure (each of which is a single page); (b) copies of judicial opinions of import to prisoners, which are marked "Court Ruling;" and (c) letters that provide pertinent information about HRDC's publications and related topics and subscription renewal letters.  HRDC encloses a self-addressed, stamped envelope with its informational brochure packets and subscription renewal letters, but does not enclose extra envelopes or stamps with the informational brochure packets, judicial opinions, or other letters that it mails to prisoners.

23.     HRDC has thousands of subscribers to its monthly magazines in the United States and abroad, including prisoners, attorneys, judges, journalists, libraries, and members of the public. Since its creation in 1990, HRDC has sent its publications to prisoners and law librarians in more than 3,000 correctional facilities across the United States, including death row units and institutions within the Federal Bureau of Prisons, such as the federal Administrative Maximum

Facility ("ADX" or "Supermax") in Florence, Colorado—the most secure prison in the United

States. *Prison Legal News* is distributed to prisons and jails within the correctional systems of all

50 states, including to dozens of prisoners housed in facilities in the State of Colorado.

24.    HRDC has been attempting to send these important publications to persons

incarcerated at the Jail. Yet Defendants maintain mail policies or practices that unconstitutionally

prevent HRDC from sending these materials to individuals incarcerated at the Jail.

## II.    Defendants' Mail Policies and Practices

25.    The Weld County Sheriff's Office Detention Policy and Procedure Manual, dated

March 3, 2026 ("Detention Manual") is available on the public website of the Weld County

Sheriff's Office at https://www.weldsheriff.com/Divisions/Jail (last visited March 17, 2026),

which    includes    a    hyperlink    to    a    PDF    of    the    Detention    Manual    at

https://www.weldsheriff.com/files/content/sheriff/v/143/divisions/jail/release_20260303_t13573

9_weld-county-so-detention-manual.pdf (last visited March 17, 2026). Defendants' current policy

on incoming mail for prisoners at the Jail, Policy 1008 (the "Mail Policy"), is recorded on pages

419 through 422 of the Detention Manual. The Mail policy provides, in pertinent part:

> 1008.3 MAIL GENERALLY
>
> Inmates may, at their own expense, send and receive mail without restrictions on quantity, provided it does not jeopardize the safety of staff, visitors or other inmates, or pose an unreasonable disruption to the orderly operation of the facility.
>
>  …
>
> 1008.6.2 CENSORSHIP OF INCOMING AND OUTGOING NON-CONFIDENTIAL CORRESPONDENCE
>
> In making the determination of whether to censor incoming non-confidential correspondence, consideration shall be given to whether rejecting the material is rationally related to a legitimate government

7

interest, and whether alternate means of communicating with others is available.

The impact the correspondence may have on other inmates and jail staff is also a factor. Reasonable alternatives should be considered and an exaggerated response should be avoided; for example, discontinuing delivery of a magazine because of one article.

Outgoing non-confidential correspondence shall only be censored to further a substantial government interest, and only when it is necessary or essential to address the particular government interest. Government interests that would justify confiscation of outgoing mail include:

(a) Maintaining facility security.

(b) Preventing dangerous conduct, such as an escape plan.

(c) Preventing ongoing criminal activity, such as threats of blackmail or extortion, or other similar conduct.

(d) Preventing harassment of those who have requested that no mail be sent to them by the inmate.

Correspondence and material identified for censorship require approval of the Detentions Captain or the authorized designee. The request for and decision if such mail will be censored, should be documented in an incident report.

Notices should be sent to the sender of censored publications. A single notification may be sent if the publication is received by multiple inmates.

1008.6.3    DOCUMENTING    REJECTED    OR    CENSORED CORRESPONDENCE

In each case where it is necessary to remove any item, or reject or censor correspondence, a written record must be made of such action, to include:

(a) The inmate name and number.

(b) A description of the mail in question.

(c) A description of the action taken and the reason for such action.

(d) The disposition of the item involved.

(e) Signature of staff.

(f) Notification to the inmate and sender (unless such notification jeopardizes any investigation or the security of the facility).

1008.7 REJECTION OF CONTROLLED MATERIALS

The Office may reject materials that may inhibit the reasonable safety, security and discipline in the daily operation of this facility. Materials that may be rejected include, but are not limited to:

- Materials that advocate violence or a security breach.

- Literature that could incite racial unrest.

- Sexually explicit material, including nude pictures, or pictures or descriptions of sexually explicit activities.

- Obscene publications or writings and mail containing information concerning where or how such matter may be obtained; any material that would have a tendency to incite murder, arson, riot, violent racism or any other form of violence; any material that would have a tendency to incite crimes against children; any material concerning unlawful gambling or an unlawful lottery; any material containing information on the manufacture or use of weapons, narcotics or explosives or any other unlawful activity.

- Material that could lead to sexual aggression or an offensive environment for inmates.

- Material that could create a hostile or offensive work environment.

- Any material with content that could reasonably demonstrate a legitimate government interest in rejecting the material.

Staff shall notify the Shift Sergeant whenever a decision is made to reject books, or other materials. The Detentions Captain or the authorized designee will be responsible for making the final decision as to any specific materials that will be prohibited within this facility.

Religious texts not supplied by facility-authorized entities may be accepted by the chaplain.

26.     In addition to the Mail Policy, Defendants have posted restrictions on incoming mail (the "Mail Restrictions") on the public website of the Weld County Sheriff's Office at https://www.weldsheriff.com/Divisions/Jail (last visited March 17, 2026).  In pertinent part, the Mail Restrictions provide:

**Items not accepted in the mail**

9

All mail is screened before it is delivered digitally to an inmate. Mail without a return address is not opened and returned to the U.S. Post Office. For security reasons, we **cannot** accept packages of the following items:

- Food or snacks,

- Stamped envelopes or stamps,

- Construction paper, newspapers, magazines, books

- Any items made with glitter, clippings or anything made with glue,

- Cards that have paper inserts or items that pop out

- As of February 2024, The Weld County Sheriff's Office jail is no longer accepting books that are shipped into the facility.

Items not accepted will be returned. Mail that is deemed not legal, nor containing a government issued check, money order or cashier's check as described above will be returned.

Postage-paid envelopes and larger envelopes may be purchased through commissary. Indigent inmates will receive one free envelope per week. Indigent inmates are defined as inmates with a balance of less than the current postage rate on their inmate account for 30 or more consecutive days.

### III.    Defendants' Censorship of HRDC's Mail

27.    Between August 2025 and March 17, 2026, HRDC sent books, magazines, informational brochures, and correspondence to individuals confined at the Jail.  During that time period, one hundred and fourteen (114) of those items were returned to HRDC by the Jail.  The items returned were addressed to individuals confirmed to still be in custody of the Jail on the day HRDC received the returned mail.

28.    The one hundred and fourteen (114) returned items consisted of:  forty (40) issues of *Prison Legal News*; forty-three (43) issues of *Criminal Legal News*; fourteen (14) copies of *Prisoners' Handbook*; three (3) copies of *PYHS*; thirteen (13) Info Packs; and one (1) follow-up letter.

29.     Many of the rejected items were returned to HRDC marked in various ways, including "RETURN REJECTED MAIL," "RETURN TO SENDER," and "unauthorized Package."  The Jail enclosed rejected notices with some of the returned items, which indicated the reason for rejection as: "Newspaper/Magazine clippings – Internet articles/material."  One of the rejection notices was modified to include the handwritten word "Books" as a reason for rejection.

30.     Because of Defendants' actions as described above, HRDC has suffered damages, and will continue to suffer damages, including, but not limited to: the suppression of HRDC's speech; the impediment of HRDC's ability to disseminate its message; frustration of HRDC's non-profit organizational mission; the loss of potential subscribers and customers; and, the inability to recruit new subscribers and supporters.

31.     Defendants, and other agents of the Jail, are responsible for or personally participated in, creating and implementing these unconstitutional polices, practices, and customs, or for ratifying and adopting them. Further, Defendants are responsible for training and supervising the employees of the Jail, whose conduct has injured and continues to injure HRDC.

32.     Defendants' actions and inactions were and are impermissibly motivated, and were and are all committed under color of state law with deliberate indifference to HRDC's rights.

33.     Plaintiff will continue to send its books and magazines to subscribers, customers, and other individuals imprisoned at the Jail.

34.     Defendants' unconstitutional policy, practices, and customs continue to violate HRDC's rights, and they were and are the moving force behind the injuries HRDC suffered as a direct result of the constitutional violations. As a result, HRDC has no adequate remedy at law.

35.     Without relief from this Court HRDC will suffer irreparable injury, since its

fundamental free speech and due process rights are being denied. The balance of hardship favors Plaintiff and the public interest will be served by granting injunctive and declaratory relief.

36.     The accommodation of the free speech and due process rights of HRDC with respect to written speech protected by the Constitution will not have any significant impact on the Jail, its staff, prisoners, or the public.

## IV.    Defendants' Failure to Provide Due Process Notice and an Opportunity to Appeal

37.     To date, Defendants have failed to provide HRDC with sufficient notice of the reason for the rejection of the magazines, books, and correspondence mailed by HRDC to prisoners at the Jail.

38.     Further, Defendants have failed to provide HRDC with an opportunity to appeal these censorship decisions before the items were rejected and returned to HRDC at HRDC's expense.

## V.    Defendants' Unconstitutional Mail Policies and Practices Are Causing HRDC Ongoing and Irreparable Harm.

39.     Due to Defendants' actions described above, HRDC has suffered damages, and will continue to suffer damages, including but not limited to: deprivation of its constitutional rights; frustration of its abilities to disseminate its political message, to recruit new subscribers and supporters, and to advance its mission as a not-for-profit organization; significant diversion of its resources, including staff time; loss of potential subscribers and customers; damage to its reputation; and significant printing, handling, and mailing costs.

40.     Defendants' actions and omissions were and are all committed under color of law and with reckless indifference to HRDC's rights.

12

41. Defendants and their agents are responsible for—or personally participated in—creating and implementing these unconstitutional policies, practices, and customs, and/or ratifying or adopting them. Further, Defendants Reams and Patch are responsible for training and supervising employees whose conduct has injured and continues to injure HRDC.

42. Defendants' unconstitutional policies, practices, and customs are ongoing, and continue to violate HRDC's constitutional rights—causing irreparable harm. Defendants' unconstitutional policies, practices, and customs will continue unless enjoined. As such, HRDC has no adequate remedy at law.

43. Defendants' actions – including, but not limited to, their implementation and arbitrary enforcement of an official mail policy – are in violation of clearly established law in this jurisdiction that makes it unlawful for governmental officials to deny persons the right to communicate, via the U.S. Mail, with incarcerated prisoners, absent a legitimate penological justification and without providing notice and an opportunity to the mail sender to challenge any such denial.

44. In addition to damages, HRDC is entitled to injunctive relief prohibiting Defendants from unconstitutionally censoring and refusing to deliver HRDC's mailings and depriving HRDC of due process of law.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Violation of the First Amendment Right to Free Speech and Communication**
**Under 42 U.S.C. § 1983**
**(Brought Against All Defendants)**

45. HRDC repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

46.     The acts described above constitute violations of HRDC's rights under the First Amendment of the U.S. Constitution, as incorporated and applicable to the Defendants under the Fourteenth Amendment.

47.     HRDC has a constitutionally protected liberty interest in communicating with incarcerated individuals by sending its materials, including the magazines *Prison Legal News* and *Criminal Legal News,* to them via U.S. Mail.  Defendants' unconstitutional censorship violates HRDC's clearly established right to communicate with these individuals.

48.     None of the content in any of the Plaintiff's publications that Defendants have rejected violates the Jail's posted mail policy.  Nor is there any other non-stated legitimate penological interest justifying Defendants' unconstitutional censorship.

49.     Defendants' conduct is objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

50.     HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies and practices; and those policies and practices were the moving force behind the violations.

51.     The acts described above have caused HRDC to suffer damages, and if not enjoined, will continue to cause HRDC to suffer damages.

52.     HRDC seeks declaratory and injunctive relief against all Defendants, and nominal and compensatory damages against the individual Defendants.  HRDC seeks punitive damages against the individual Defendants in their individual capacities.

**SECOND CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment Right to Notice and Due Process**
**Under 42 U.S.C. § 1983**
**(Brought Against All Defendants)**

14

53. HRDC repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

54. The acts described above constitute violations of HRDC's rights, the rights of other correspondents who have attempted to or intend to correspond with persons incarcerated in the Jail, and the rights of persons incarcerated in the Jail, under the Fourteenth Amendment of the U.S. Constitution.

55. HRDC has a clearly established right under the Due Process Clause of the Fourteenth Amendment to receive notice and an opportunity to object and/or appeal Defendants' decisions to prevent Plaintiff's mail from reaching prisoners held in the Jail.

56. Defendants' policy and practice of censoring HRDC's publications fails to provide Plaintiff with individualized notice of the censorship or an opportunity to be heard.  Defendants did not provide constitutionally adequate notice of the basis for censorship of HRDC's magazines nor did Defendants provide HRDC an opportunity to appeal the censorship decision with a party not involved in that original decision.  Thus, Defendants violated HRDC's clearly established right to due process.

57. Defendants' conduct is objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

58. HRDC's injuries and the violations of its constitutional rights were directly and proximately caused by Defendants' policies and practices; and those policies and practices were the moving force behind the violations.

59. The acts described above have caused HRDC to suffer damages, and if not enjoined, will continue to cause HRDC to suffer damages.

15

60.    HRDC seeks declaratory and injunctive relief against all Defendants, and nominal and compensatory damages against the individual Defendants.  HRDC seeks punitive damages against the individual Defendants in their individual capacities.

### THIRD CLAIM FOR RELIEF
**Violation of Article II, Section 10 of the Colorado Constitution -- Free Speech**
**Under C.R.S. 13-21-131**
**(Brought Against All Individual Defendants)**

61.    HRDC repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

62.    At all relevant times, all Individual Defendants to this claim were acting under the color of state law, and each was a peace officer as defined by Colo. Rev. Stat. § 24-31-901(3).

63.    The acts described above constitute violations of HRDC's rights under Article II, Section 10 of the Colorado Constitution, which provides in relevant part that "No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty."

64.    HRDC has a liberty interest, protected by the Colorado Constitution, in communicating with incarcerated individuals by sending its materials, including the magazines *Prison Legal News* and *Criminal Legal News,* to them via U.S. Mail.  Defendants' unconstitutional censorship violates HRDC's clearly established right to communicate with these individuals.

65.    None of the content in any of the Plaintiff's publications that Defendants have rejected violates the Jail's posted mail policy.  Nor is there any other non-stated legitimate penological interest justifying Defendants' unconstitutional censorship.

66.    Defendants' conduct is objectively unreasonable and was undertaken recklessly, intentionally, willfully, with malice, and with deliberate indifference to the rights of others.

16

67.    HRDC's injuries and the violations of its Colorado constitutional rights were directly and proximately caused by Defendants' policies and practices; and those policies and practices were the moving force behind the violations.

68.    The acts described above have caused HRDC to suffer damages, and if not enjoined, will continue to cause HRDC to suffer damages.

69.    HRDC seeks declaratory and injunctive relief against all Defendants, and nominal and compensatory damages against the individual Defendants.  HRDC seeks punitive damages against the individual Defendants in their individual capacities.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief as follows:

1.    A declaration that Defendants' policies and practices violate the First and Fourteenth Amendments of the U.S. Constitution, as well as Article II, Section 10 of the Colorado Constitution, facially and as applied;

2.    Preliminary and permanent injunctions preventing Defendants from continuing to violate the First and Fourteenth Amendments of the U.S. Constitution, as well as Article II, Section 10 of the Colorado Constitution, and providing other equitable relief;

3.    Nominal damages for each violation of HRDC's rights by the Individual Defendants;

4.    Compensatory damages against the Individual Defendants in an amount to be proved at trial;

17

5.    Punitive damages against the Individual Defendants in their individual capacities, in an amount to be proved at trial;

6.    An award of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988, C.R.S. 13-21-131(3), and other applicable law; and

7.    Such further and additional relief as this Court may deem just and equitable.

## JURY DEMAND

Plaintiff Human Rights Defense Center hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: March 31, 2026                      Respectfully submitted,


KILLMER LANE, LLP

*s/ Darold W. Killmer*
Darold W. Killmer
Reid Allison
1543 Champa Street, Ste. 400
Denver, CO 80202
303-571-1000
303-571-1001 - fax
dkillmer@killmerlane.com
rallison@killmerlane.com

HUMAN RIGHTS DEFENSE CENTER
Jonathan P. Picard
P.O. Box 1151
Lake Worth, FL 33460
Telephone: (561) 360-2523
Fax: (561) 828-8166
jpicard@humanrightsdefensecenter.org

*Attorneys for Plaintiff Human Rights Defense Center*

18